UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DISABILITY RIGHTS WASHINGTON,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>PENRITH FARMS, JAMES BREWSTER and SHERRY BREWSTER, and STEVEN A. CARRERAS.<br><br>　　Defendants. | NO. CV-09-024-JLQ<br><br>**ORDER DENYING MOTION TO DISMISS** |

　　**BEFORE THE COURT** is the Defendants' Motion to Dismiss (Ct. Rec. 27), to which the Plaintiff has responded in opposition (Ct. Rec. 33). The court heard telephonic oral argument on the Motion on Thursday, March 19th, 2009. David Carlson, Zachary Burr, and Christopher Howard appeared on behalf of the Plaintiff. Matthew Sanger appeared on behalf of the Defendants. This Order is intended to memorialize and supplement the oral rulings of the court.

　　The Defendant argues that this court lacks subject matter jurisdiction to hear the case because an allegation made by the Plaintiff, necessary to invoke federal question jurisdiction, is untrue; namely that the residents of Penrith Farms are not mentally ill, developmentally disabled, and do not lack involvement of their families and the ability to take care of themselves. If no one at Penrith Farms falls under the class of persons intended to be protected by the federal Acts in question, the court would lack jurisdiction to hear the claim.

　　"A federal court is presumed to lack jurisdiction in a particular case unless the

ORDER - 1

contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). In the Complaint, the Plaintiff alleges that there are mentally ill residents at Penrith Farms, thereby involving federal laws and corresponding federal question jurisdiction before this court. Taken as true, the Plaintiff's allegations establish a *prima facie* case of federal question jurisdiction. However, the Defendants argue that the allegations are false, and therefore there is no federal question jurisdiction.

A Fed. R. Civ. P. 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039, (9th Cir. 2004). The Plaintiff's Complaint facially contains sufficient allegations to invoke federal question jurisdiction, and this is not disputed by the Defendants. "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise involve federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In such circumstances, a court may examine extrinsic evidence without converting the motion to one for summary judgment, and there is no presumption of the truthfulness of the Plaintiff's allegations. *Safe Air*, 373 F.3d at 1039.

"Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and must satisfy the requirements specified in *Bell v. Hood*." *Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138, 140 (9th Cir. 1983). In *Bell*, the Supreme Court determined that jurisdictional dismissals are warranted where "the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial or frivolous." *Bell v. Hood*, 327 US 678, 682-83 (1946). The allegations put forth by DRW in it's Complaint are not insubstantial or frivolous; they are not excessive or outrageous in their scope, and are premised in genuine belief. The Defendants have failed to show that the stringent standard of "wholly insubstantial or

ORDER - 2

frivolous" has been met, or that the sole purpose of the filing is to obtain federal jurisdiction.

Furthermore, the merits of the case are so intertwined with the jurisdictional issue as to render them inseparable. In such a case, dismissing the Complaint on the basis of a Fed. R. Civ. P. 12(b)(1) Motion to Dismiss is inappropriate. "[W]hen a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous." *Thornhill Pugl'g Co. v. Gen. Tel. Co.,* 594 F.2d 730, 734 (9th Cir. 1979). "Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court...is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). See also *Morrison v. Amway Corp*, 323 F.3d 920, 925 (11th Cir. 2003). See also *Safe Air*, 373 F.3d at 1039-40.

Penrith Farms asks the court to rule that they can deny DRW access to the Farm and its residents due to the nature of their business and services provided. However, such argument ignores the individual rights aspect of the Acts. The 2000 PAIMI amendments support this conclusion; by adding the statutory language whereby even those individuals residing in their own home fall within the jurisdiction of the Act, it is clear that Congress intended every case to be examined individually. The DD Act places the same emphasis on individual rights. 42 USC § 15043(a)(2)(B) gives DRW "authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred..." There is no limitation placed on where these investigations take place; rather the investigatory power is couched in terms of protection of individual rights in any context. DRW is explicitly empowered to investigate allegations of abuse within a home, which is clearly not a mental health

ORDER - 3

institution or provider of therapeutic or psychiatric services or even a facility of any form or fashion. DRW's role is to protect *individual rights,* not to serve solely as a watchdog for certain types of institutions or facilities.

The allegations of JS and his mother are dismissed by the Defendant as hearsay allegations, unfounded in fact (Ct. Rec. 28, 4:5-12). It is possible that this is accurate, but this is not a judgment the court may make until some degree of fact finding and discovery has been conducted. Furthermore, JS alleged that another resident of Penrith Farms was mentally retarded (Ct. Rec. 35, ¶ 15), another fact the veracity of which is indeterminable without further discovery. A threshold showing of mental illness is not required for DRW to investigate; rather all that is required is a showing of substantial evidence.

> Courts have found that protection and advocacy systems need not 'make a threshold showing of mental illness' in order to exercise their authority under PAMII." *Protection and Advocacy for Persons with Disabilities v. Armstrong*, 266 F.Supp.2d 303, 313 (D.Conn. 2003). A denial of access on the grounds that [the P&A system] has not made a conclusive showing that...students are individuals with mental illness or developmentally disabled "prevents [the P&A system] from bringing in their own mental health professionals to ascertain whether any [students] do in fact suffer from mental illness. Such conduct ... defeats the very purpose of PAMII and the DD Act to provide effective protection and advocacy services to mentally ill and developmentally disabled persons." *Michigan Protection and Advocacy Service v. Miller*, 849 F.Supp. 1202, 1207 (W.D.Mich. 1994).
>
> Instead of requiring conclusive evidence that a particular person or persons qualifies as an individual with mental illness or developmentally disabled for the purposes of a protection and advocacy system's authorizing statutes, courts have held that a showing of "substantial evidence" must suffice in order for such systems to fulfill their statutory mandate. See *id*. at 1207. " '[E]vidence that a facility has previously housed individuals who are mentally ill, as well as evidence that some current residents may be mentally ill[,] is sufficient under PAMII to merit access by [protection and advocacy systems].' " *Protection and Advocacy for Persons with Disabilities*, 266 F.Supp.2d at 314 (quoting *Kentucky Prot. & Advocacy Div. v. Hall*, et al., No. 3:01cv-538-H, slip. op. (W.D.Ky. Sept. 24, 2001)) (emphasis added). *State of Connecticut Office of Protection and Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.,* 355 F.Supp.2d 649, 655 (D.Conn. 2005).

The Defendants' admissions regarding Axis I diagnoses is sufficient evidence that some residents *may* be mentally ill. Penrith Farms' own website indicates that it treats a number of conditions, including depression and other mood disorders, anxiety disorders, poor impulse control, anger management problems, and defiance and oppositional

ORDER - 4

behavior (Ct. Rec. 5, ¶ 26). It is plausible that by inviting those with such disorders to live at Penrith Farms, some residents might be sufficiently afflicted by these various disorders to rise to the level of significant mental illness. Furthermore, there also exist the factual allegations that one former resident, JS, actually has significant mental disorders, including bipolar disorder and personality change based on brain trauma, according to his previous diagnoses (Ct. Rec. 33. 8:17-9:9; Ct. Rec. 34, ¶ 6; Ct. Rec. 36). The past medical history of JS suggests that persons with potentially serious mental illness were or are residing at Penrith Farms. For all these reasons, the court finds substantial evidence that further fact-finding is both statutorily permissible and necessary.

Accordingly, **IT IS HEREBY ORDERED:**

1. The Defendants' Motion to Dismiss (Ct. Rec. 27) is **DENIED**.

2. Counsel for both Parties shall work together in formulating a plan by which DRW will conduct a preliminary investigation and in the least obtrusive manner possible discover the relevant facts concerning the status of Penrith Farms residents and the veracity of the allegations in question. Preliminary, consensual interviews may be conducted by DRW, and interviewees shall be instructed by Penrith Farms that they may speak alone and confidentially with DRW representatives if they so choose.

3. Following the Plaintiff's interviews, it shall file a report with the court as to any further proceedings it wishes to pursue in this matter.

The Clerk is hereby directed to enter this Order and furnish copies to counsel.

**DATED** this 20th day of March, 2009.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 5